UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

INVICTA WATCH COMPANY OF                           CASE NO.:
AMERICA, INC., a Florida corporation,

      Plaintiff,

vs.

i-DESIGN BV, a foreign entity, a/k/a
i-DESIGN INTERNATIONAL BV,
CREAAL HOLDING B.V., a foreign entity,
a/k/a CREAAL HOLDING, and
G. JOOST TERVELDE, an individual,

      Defendants.

_____

## COMPLAINT FOR DAMAGES

The Plaintiff, INVICTA WATCH COMPANY OF AMERICA, INC., a Florida corporation. ("INVICTA"), sues the Defendants, i-DESIGN BV, a foreign entity, a/k/a i-DESIGN INTERNATIONAL BV (i-DESIGN"), CREAAL HOLDING B.V., a foreign entity, a/k/a CREAAL HOLDING ("CREAAL"), and G. JOOST TERVELDE ("TERVELDE"), an individual, and alleges as follows:

JURISDICTION, PARTIES AND VENUE

1. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds the value of $75,000.00, exclusive of interest and costs.

2. This Court also has subject matter jurisdiction because this action arises, in part, under the Lanham Trademark Act, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"). Accordingly, this Court has federal question jurisdiction over the subject matter of this

action pursuant to 15 U.S.C. § 1221 and 28 U.S.C. §§ 1338(a), (b). Venue in this district is proper under 28 U.S.C. § 1391(b).

3. The Plaintiff, INVICTA, is a corporation organized under the laws of the State of Florida, with its principal place of business in Broward County, Florida.

4. The Defendant, i-DESIGN, is a corporation organized under the laws of the Netherlands, with its principal place of business in Deventer, Netherlands.

5. i-DESIGN maintains offices in Hollywood, Broward County, Florida, conducts business in the State of Florida and transacts business in Broward County, Florida.

6. Defendant CREAAL Holding is the parent company of i-Design and owns i-Design as a subsidiary, upon best knowledge and belief.  CREAAL manages i-DESIGN administratively, fiscally and financially as well as provides an international platform for business operations, including operations in the State of Florida and Broward County. CREAAL and i-DESIGN act and operate as a single business entity, owned, managed and operated by TERVELDE. As such, CREAAL is liable to INVICTA, along with i-DESIGN and TERVELDE, individually, for the actionable conduct and improper acts of all and each of the Defendants.

7. i-DESIGN and CREAAL are subject to the jurisdiction of this Court pursuant to § 48.193(1)(a) and/or (g), Florida Statutes, in that, at all relevant times, (i) Defendants operated, conducted, engaged in, or otherwise carried on a business or business venture in Florida; (ii) Defendants, at all relevant times, engaged in substantial and not isolated activity within Florida; (iii) Defendants have committed, or aided, abetted, contributed to or participated in the commission of improper acts, including  unauthorized use of

proprietary trademarks for which INVICTA is the owner, and (iv) Defendants have systemic and continuous contacts with Florida .

8. i-DESIGN and CREAAL are also subject to the jurisdiction of this Court pursuant to § 48.193(2), Florida Statutes, in that, at all relevant times, i-DESIGN was engaged in substantial and not isolated activity within Florida.  Specifically:

   a. At all relevant times, i-DESIGN entered into various projects and agreements with INVICTA in Florida;

   b. At all relevant times, i-DESIGN issued, made and delivered all services due under the agreements with INVICTA in Florida;

   c. At all relevant times, i-DESIGN maintained client(s), customers, and business relationships in Florida;

   d. At all relevant times, INVICTA issued, made and delivered all payments due under the agreements with i-DESIGN in Florida;

   e. At all relevant times, representatives of i-DESIGN traveled to Florida for purposes of conducting business; and,

   f. At all relevant times, i-DESIGN advertised and held out to the general public that it maintained an office for transacting business in Broward County, Florida.

9. The Defendant, TERVELDE, an individual, upon information and belief was and is an agent, representative, beneficial owner and officer of i-DESIGN and CREAAL, maintained and maintains business relations in the State of Florida, Broward County, and in all other respects is *sui juris*.

10. Upon information and belief, TERVELDE personally runs, operates, and exercises control over Defendants i-DESIGN and CREAAL and directed and participated in and continues to direct, participate and financially benefit from i-DESIGN and CREAAL's wrongful acts complained herein, making him personally and individually liable for i-DESIGN and CREAAL's below referenced wrongful conduct and actionable acts.

11. TERVELDE is subject to the jurisdiction of this Court pursuant to § 48.193(1)(a)-(g), Florida Statutes, in that, at all relevant times, TERVELDE operated, conducted, engaged in, or otherwise carried on a business or business venture in Florida.

12. TERVELDE is also subject to the jurisdiction of this Court pursuant to § 48.193(2), Florida Statutes, in that, at all relevant times, TERVELDE was engaged in substantial and not isolated activity within Florida.  Specifically:

    a. At all relevant times, TERVELDE entered into various projects and agreements with INVICTA in Florida;

    b. At all relevant times, INVICTA issued, made and delivered all payments due under the agreements with TERVELDE in Florida; and,

    c. At all relevant times, TERVELDE traveled to Florida for purposes of conducting business on behalf of i-DESIGN in Florida, including but not limited to conducting business meetings with customers in Florida.

13. Venue is proper in this Court because one or more of the causes of action accrued in Broward County, Florida and because a substantial part of the events giving rise to the claims in this case occurred in this judicial district.

14. Defendants, and each of them, are individuals and business entities who, upon

information and belief, are acting in concert and active participation with each other in committing the wrongful acts alleged herein.

<u>FACTUAL ALLEGATIONS COMMON TO ALL COUNTS</u>

15. INVICTA is in the business of manufacturing, distributing and selling timepieces, eyewear and accessories under the brand names and registered trademarks of Invicta, TechnoMarine, S.Coifman, and Glycine, (collectively, the "Invicta's Trademarks"), among others, to the general public both domestically and abroad through Invicta Watch Group.

16. INVICTA sells its products both domestically and abroad through various retail outlets and through internet sales.

17.  INVICTA distributes its products both domestically and abroad under arrangements or agreements through various distributors, including but not limited to, Double Wood, B.V., a/k/a Invicta Watch Europe.

18. i-DESIGN, CREAAL and TERVELDE are in the business of developing and creating custom computer software and computing platforms for its clients and customers in Florida, the United States, and abroad.

19. Commencing in January 2011, INVICTA and the Defendants established a business relationship whereby INVICTA hired i-DESIGN and TERVELDE to develop, create, provide and deliver to INVICTA certain custom computer software and server platforms for exclusive use by INVICTA and its distributors in their business.

20. In exchange for this product and service, INVICTA agreed to pay i-DESIGN and TERVELDE a reasonable fee for which i-DESIGN and TERVELDE would submit an

invoice which INVICTA would pay in 30 days.

21. From January 2011 through February 2017, i-DESIGN and TERVELDE created, developed and delivered to INVICTA certain custom software and operating platforms which are the sole and exclusive property of INVICTA.

22. INVICTA paid i-DESIGN and TERVELDE a total of $3,231,584.80 for the software and computer operating platforms.

23. Unbeknownst to INVICTA, i-DESIGN and TERVELDE inserted various undocumented methods of gaining access to the software and platform programs it developed for INVICTA by using another installed program or rootkit that bypasses normal authentication ('backdoor').

24. i-DESIGN and TERVELDE installed these backdoors without INVICTA's knowledge or consent.

25. i-DESIGN and TERVELDE used these backdoors as a means to take control over INVICTA's computers and operating systems when INVICTA failed or otherwise refused to pay any of the Defendants' invoices for services, essentially creating a ransom situation.

26. i-DESIGN and TERVELDE used these backdoors on multiple occasions to hold INVICTA's computers and operating systems hostage until INVICTA paid for the Defendants' services.

27. Any and all payments due or required under the agreements between the parties were made in Broward County, Florida.

28. Defendants engaged in actionable and improper acts with respect to INVICTA's

software platforms and infrastructure in several distinct and harmful ways, including but not limited to: (i) willfully and knowingly encrypting source codes for INVICTA's server and INVICTA's website(s) such that only i-DESIGN and/or TERVELDE could gain access to each, making INVICTA entirely dependent on the Defendants to access its own system(s), website(s) and sales platform(s); and (ii) willfully and knowingly, keeping access to the control center and "heartbeat" of INVICTA's systems in and under i-DESIGN's possession and control such that Defendants could bring down and/or shut down INVICTA's websites, sales platforms and software systems without INVICTA's knowledge or consent, instantly paralyzing INVICTA's business operations.

29. INVICTA has complied with all conditions precedent to bringing this action, or such conditions have been waived.

30. INVICTA has retained the services of the undersigned attorney to represent it in this matter and has agreed to pay a reasonable attorney's fee and costs for such service.

## COUNT I - VIOLATION OF LANHAM ACT

31. Plaintiff realleges each allegation set forth in the paragraphs one through fourteen above.

32. Plaintiff is engaged in the manufacture, distribution and sale of various types of timepieces, eyewear and accessories sold at retail stores and through distributors throughout the world which embody the trademarks, service marks, likenesses, logos and other indicia of various brands, including but limited to Invicta, TechnoMarine, S.Coifman, and Glycine (the "Merchandise").

33. **"Invicta"** is the trademark owned and used by the Plaintiff in connection with its marketing and distribution of Merchandise and other related goods in all aspects of the timepiece industry and to distinguish the Plaintiff's products from all other such products. The Invicta trademark has been in existence since 1837 and the Plaintiff has obtained registration with the U.S. Patent & Trademark Office and has used its trademarks in connection with its business for over 20 years. The **"Invicta"** trademark is a federally registered trademark: Federal Registration No. 2947259 for use in several classes of goods, including but not limited to watches, eyewear, watch and eyewear cases, commercial stores, writing instruments and many others. Plaintiff is the owner of and has enforceable trademark rights in the "**Invicta**" mark.

34. **"TechnoMarine"** is the trademark owned and used by the Plaintiff in connection with its marketing and distribution of Merchandise and other related goods in all aspects of the timepiece industry and to distinguish the Plaintiff's products from all other such products. The TechnoMarine trademark has been in existence for several decades and the Plaintiff, through its wholly owned subsidiary, TM Brands LLC, a Florida limited liability company, obtained registration with the U.S. Patent & Trademark Office and has used its trademarks in connection with its business. The **"TechnoMarine"** trademark is a federally registered trademark: Federal Registration No4000628 for use in connection with several classes of goods, including but not limited to watches, eyewear, watch and eyewear cases, commercial stores, writing instruments and many others. Plaintiff is the owner of and has enforceable trademark rights in the "**TechnoMarine**" mark.

35. **"S. Coifman"** is the trademark owned and used by the Plaintiff in connection with its marketing and distribution of Merchandise and other related goods in all aspects of the timepiece industry and to distinguish the Plaintiff's products from all other such products. The S. Coifman trademark has been in existence for several decades and the Plaintiff obtained registration with the U.S. Patent & Trademark Office and has used its trademarks in connection with its business. The **"S. Coifman"** trademark is a federally registered trademark: Federal Registration No. 2757323 for use in connection with several classes of goods, including but not limited to watches, eyewear, watch and eyewear cases, commercial stores, writing instruments and many others. Plaintiff is the owner of and has enforceable trademark rights in the "**S. Coifman**" mark.

36. **"Glycine"** is the trademark owned and used by the Plaintiff in connection with its marketing and distribution of Merchandise and other related goods in all aspects of the timepiece industry and to distinguish the Plaintiff's products from all other such products. The Glycine trademark has been in existence since 1914 and the Plaintiff obtained registration with the U.S. Patent & Trademark Office and has used its trademarks in connection with its business. The **"Glycine"** trademark is a federally registered trademark: Federal Registration No. 3950306 for use in connection with several classes of goods, including but not limited to watches, eyewear, watch and eyewear cases, commercial stores, writing instruments and many others. Plaintiff is the owner of and has enforceable trademark rights in the "**Glycine**" mark.

37. Plaintiff is the sole owner and possesses the exclusive right to utilize all federally registered trademarks, service marks, likenesses, logos, and other indicia, including but

not limited to Invicta, TechnoMarine, S. Coifman and Glycine (collectively, "Invicta's Trademarks") on and in connection with their Merchandise sold and offered for sale in North America and abroad.

38. INVICTA has a decidedly strong and loyal following among those who buy and sell timepieces. INVICTA has appeared in numerous television programs in the United States, Canada, and throughout the world, and INVICTA's Merchandise has been bought and sold by millions of collectors and aficionados.

39. As a result of the foregoing, Invicta's Trademarks have developed and now possess secondary and distinctive meaning to purchasers of the Merchandise bearing any or all of Invicta's Trademarks.  INVICTA annually realizes substantial income from the sale of the Merchandise bearing Invicta's Trademarks, and hundreds of thousands of such items have been sold throughout the United States and abroad.

40. On information and belief, Defendants use, promote and/or advertise their services bearing any or all of Invicta's Trademarks in their marketing material and on their website.

41. The Defendants' use of Invicta's Trademarks is of the same general appearance as Plaintiff's actual Trademarks and is likely to cause confusion among prospective purchasers.

42. Defendants' use of Invicta's Trademarks is not authorized by the Plaintiff.

43. INVICTA has no affiliation or associations with the Defendants and the use of Invicta's Trademarks by the Defendants has injured and is likely to injure the Plaintiff's reputation for high quality goods.

44. The aforesaid acts by Defendants and others are likely to cause the purchasing public to believe that INVICTA sponsors or approves the services provided by the Defendants and/or that such services are subject to the same quality control and regulation required by the Plaintiff, despite the fact that this is not true.  It also injures the Plaintiff in that Defendants do not have to pay any royalty for any sales associated with the use of Invicta's Trademarks.

45. The aforesaid marketing, distribution and advertising of Defendant's services bearing the trademarks, service marks, likenesses, logos and other indicia of INVICTA constitutes a false designation of the source of origin of such services and falsely describes and represents such services. The use by Defendants and others of the Invicta's Trademark also constitutes an attempt to palm off and appropriate to themselves the Plaintiff's exclusive rights therein.

46. Upon information and belief, Defendants and others have and will continue to engage in such unauthorized activities in this state and elsewhere in interstate commerce and are likely to continue such activities to the great injury of Plaintiff.

47. Plaintiff has no adequate remedy at law and will suffer irreparable harm and damage as a result of the aforesaid acts, in an amount presently incalculable.

48. By reason of the foregoing, Plaintiff hereby asserts a claim against Defendants for injunctive and monetary relief pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), with regards to the false designation of origin and false descriptions and unauthorized representations in commerce by the Defendants of Invicta's Trademarks.

WHEREFORE, the Plaintiff, INVICTA, demands that Defendants, their agents,

servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert with them, be enjoined in this and all other judicial districts in the United States, preliminarily during the course of this litigation and permanently from: (i) marketing, distributing, selling, offering for sale, holding for sale or advertising any of their services by using the name, trademark, or likeness of Invicta's Trademarks or any colorable variation or imitation thereof; and, (ii) representing that any services distributed, sold, held for sale or advertised by them is sponsored or authorized by Plaintiff in this district or in any other district in which Plaintiff seeks to enforce this Court's injunction order; the Plaintiff also demands a judgment in its favor against the Defendants, i-DESIGN, CREAAL and TERVELDE., for damages, pre-judgment interest, post judgment interest, costs, attorney's fees and for such further relief as the Court deems proper.

<u>COUNT II - INFRINGEMENT OF REGISTERED TRADEMARK</u>

49. Plaintiff re-alleges each allegation set forth in paragraphs one through fourteen, and thirty-one through forty-eight, above.

50. By reason of the foregoing, Plaintiff hereby asserts a claim against Defendants for injunctive and monetary relief pursuant to 15 U.S.C. § 1114(b) with respect to Defendants' infringement of the registered mark.

WHEREFORE, the Plaintiff, INVICTA, demands that Defendants, their agents, servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert with them, be enjoined in this and all other judicial districts in the United States, preliminarily during the course of this litigation and permanently from: (i) marketing, distributing, selling, offering for sale, holding for sale or advertising any of their services

by using the name, trademark, or likeness of Invicta's Trademarks or any colorable variation or imitation thereof; and, (ii) representing that any services distributed, sold, held for sale or advertised by them is sponsored or authorized by Plaintiff in this district or in any other district in which Plaintiff seeks to enforce this Court's injunction order; the Plaintiff also demands a judgment in its favor against the Defendants, i-DESIGN and TERVELDE., for damages, pre-judgment interest, post judgment interest, costs, attorney's fees and for such further relief as the Court deems proper.

COUNT III – STATUTORY INJURY TO BUSINESS REPUTATION AND DILUTION
(Florida Statutes §495.151)

51. Plaintiff realleges each allegation set forth in paragraphs one through forty-eight, above.

52. This is an action for statutory injury to business reputation and dilution pursuant to Florida Statutes §495.151.

53. Defendants' infringing and unauthorized use of the Invicta's Trademarks has caused confusion, mistake and deception and is likely to cause further confusion, mistake and deception and is therefore causing a likelihood of injury to Plaintiff's business reputation or dilution of the distinctive quality of the Invicta's Trademarks.

54. Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff.

55. By reason of the foregoing, Plaintiff hereby asserts a claim against Defendants for injunctive and monetary relief pursuant to Florida Statutes §495.151 with respect to Defendants' statutory injury to business reputation and dilution.

WHEREFORE, the Plaintiff, INVICTA, demands that Defendants, their agents,

servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert with them, be enjoined in this and all other judicial districts in the United States, preliminarily during the course of this litigation and permanently from: (i) marketing, distributing, selling, offering for sale, holding for sale or advertising any of their services by using the name, trademark, or likeness of Invicta's Trademarks or any colorable variation or imitation thereof; and, (ii) representing that any services distributed, sold, held for sale or advertised by them is sponsored or authorized by Plaintiff in this district or in any other district in which Plaintiff seeks to enforce this Court's injunction order; the Plaintiff also demands a judgment in its favor against the Defendants, i-DESIGN, CREAAL and TERVELDE., for damages, pre-judgment interest, post judgment interest, costs, attorney's fees and for such further relief as the Court deems proper.

### COUNT IV -  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

56. INVICTA incorporates the allegations contained in paragraphs one through thirty as if fully set forth herein.

57. The Defendants know or knew that INVICTA sells and has sold its Merchandise to customers in this state, throughout the United States, and abroad through the use of computers and internet sales.

58. INVICTA had a reasonable likelihood of future economic benefit from the continued sales of its Merchandise to customers in this state, throughout the United States, and abroad.

59. During the period in which Defendants held INVICTA's computers and sales platforms hostage, INVICTA was unable to transact business, perform its agreements with

distributors and third parties, and its business relationships were negatively affected and disrupted.

60. Upon information and belief, the Defendants intentionally, willfully, maliciously and improperly interfered with INVICTA's operations by surreptitiously installing the backdoors, encrypting source codes to INVICTA's server and website(s), and holding INVICTA's computers, systems and infrastructure hostage.

61. Upon information and belief, the Defendants' actions and conduct have influenced consumers' purchasing decisions in this District and elsewhere and have disrupted INVICTA's sales to consumers, and will continue to do so unless enjoined.

62. INVICTA has suffered and will continue to suffer actual damages unless the Defendants' conduct is enjoined.

   WHEREFORE, the Plaintiff, INVICTA, demands a judgment in its favor against the Defendants, i-DESIGN and TERVELDE., for damages, pre-judgment interest, post judgment interest, costs, and for such further relief as the Court deems proper.

### COUNT V – BREACH OF CONTRACT AGAINST i-DESIGN and CREAAL

63. INVICTA re-alleges and incorporates paragraphs one through thirty as if fully set forth herein.

64. INVICTA contracted with i-DESIGN and, by extension, CREAAL and TERVELDE for the development, creation and implementation of custom software and computing platforms for use in INVICTA's business operations.

65. INVICTA performed as required in accordance with the terms the Parties' agreement.

66. i-DESIGN and TERVELDE materially breached its contract with INVICTA by

committing, including but not limited to, the following acts and/or omissions:

    a.    engaging in a pattern of over-billing for the time period in which the services were rendered;

    b.    secretly installing backdoors to all of the software and computer platforms they developed, encrypting source codes and keeping the central control of the system solely under Defendants control, all actions that were specifically designed to allow them to gain access to and control over the Plaintiff's computers; and,

    c.    failing to deliver to INVICTA certain proprietary software and computer platforms.

67. All of the Defendants' charges and fees for services are unreasonable and exceed normal and customary billing practices in the software development industry.

68. As a result of Defendants' breach, INVICTA has been damaged in that it overpaid the Defendants.

69. As a result of the Defendants' actions, INVICTA was forced to hire computer and software experts in order to close the backdoors installed by the Defendants and prevent them from gaining access to INVICTA's systems. The third-party software and IT experts hired by INVICTA had to rebuild the entire system, overcome the encryption imposed improperly by Defendants, and regain access to INVICTA's proprietary systems and information.

WHEREFORE, the Plaintiff, INVICTA, demands a judgment in its favor against the Defendants, i-DESIGN, CREAAL and TERVELDE., for damages, pre-judgment interest,

post judgment interest, costs, and for such further relief as the Court deems proper.

COUNT VI – UNJUST ENRICHMENT AGAINST DEFENDANTS

70. INVICTA realleges and incorporates paragraphs one through thirty as if fully set forth herein.

71. During the course of 2011 through 2017, INVICTA paid to i-DESIGN, and by extension to CREAAL and TERVELDE, for the development and implementation of certain custom and proprietary software and computer platforms a total value of approximately $3,231,584.80.

72. The payments made to i-DESIGN and TERVELDE were excessive, unreasonable and beyond the normal and customary fees charged for such services in the software development industry, resulting in an over-payment to the Defendants for their services.

73. The payments to i-DESIGN and TERVELDE were provided at their direction and/or with their knowledge.

74. i-DESIGN and TERVELDE knew or should have known that their fees and charges were excessive and unreasonable.

75. The Defendants voluntarily accepted and retained said payments in circumstances that would make it inequitable for them to retain said benefit without conferring the value thereof to INVICTA. Specifically, it would be inequitable for i-DESIGN and TERVELDE to retain the over-payments.

76. Defendants' acts herein constitute unjust enrichment at INVICTA's expense in violation of the laws of the State of Florida.

WHEREFORE, the Plaintiff, INVICTA, demands a judgment in its favor against the Defendants, for damages, pre-judgment interest, post judgment interest, costs, and for such further relief as the Court deems proper.

COUNT VII – CONVERSION AGAINST DEFENDANTS

77. INVICTA realleges and incorporates paragraphs one through thirty as if fully set forth herein.

78. During the course of 2011 through 2017, INVICTA paid to i-DESIGN and TERVELDE for the development and implementation of certain custom and proprietary software and computer platforms a total value of approximately $3,231,584.80.

79. The payments made to i-DESIGN and TERVELDE were excessive, unreasonable and beyond the normal and customary fees charged for such services in the software development industry, resulting in an over-payment to the Defendants for their services.

80. The Defendants, with intent to deceive, falsely represented to the Plaintiff their fees for services as required under the agreement.

81. The Defendant made these representations knowing they were false and with the intent to obtain the Plaintiff's money.

82. The Plaintiff reasonably relied upon the misrepresentations of the Defendants and as a result provided the Plaintiff with the funds.

83. The Defendants knowingly converted the Plaintiff's funds with the intent to either temporarily or permanently deprive the Plaintiff of its right to the monies, and the

Defendants intended through such misrepresentations to appropriate for their own use the funds belonging to the Plaintiff.

84. As a direct and proximate result of the Defendants' conduct, the Plaintiff has been damaged, it lost the use of the aforesaid monies, it failed to derive income from said capital, it failed to derive any appreciation from the capital and it was otherwise damaged by the Defendants' misappropriations of the funds.

WHEREFORE, the Plaintiff, INVICTA, demands a judgment in its favor against the Defendants, for damages, pre-judgment interest, post judgment interest, costs, and for such further relief as the Court deems proper

## COUNT VIII - CIVIL THEFT

85. The Plaintiff reasserts and restates all of the allegations contained in paragraphs one through thirty, *inclusive*, as if specifically set forth herein.

86. This is an action for violation of Florida Statute § 772.11, Civil Theft.

87. The Defendants, with intent to deceive, falsely represented to the Plaintiff their fees for services as required under the agreement.

88. The Defendant made these representations knowing they were false and with the intent to obtain the Plaintiff's money and to appropriate for their own use the funds of the Plaintiff in violation of § 812.014(1), Florida Statutes.

89. Additionally, the Defendants knew or should have known that their actions were unreasonable, excessive, and beyond industry standards.

90. As a direct and proximate result of the Defendants' conduct, the Plaintiff has been damaged.

91. By virtue of § 772.11, Florida Statutes, the Plaintiff is entitled to treble the amount of their damages and recovery of their attorney's fees.

WHEREFORE, the Plaintiff respectfully request that this Court enter a judgment against the Defendants for treble the amount of all sums owed, plus interest, award the Plaintiff their costs and attorney's fees, award pre-judgment and post-judgment interest, and issue any other orders the Court deems equitable, just and proper.

### COUNT IX – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
#### (Florida Statutes § 501.204)

92. The Plaintiff reasserts and restates all of the allegations contained in paragraphs one through thirty, *inclusive*, as if specifically set forth herein.

93. This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.204, et seq.

94. Plaintiff was over-billed and over-charged for services rendered in Florida, as a consumer. Such rampant and arbitrary over-billing constitutes unfair and deceptive trade practices by Defendants engaged in commerce in the State of Florida.

95. Such unfair trade practices by Defendants are immoral, unethical, oppressive, unscrupulous and offend established public policy and statute within the State of Florida.

96. Plaintiff also has an enforceable trademark right in the Invicta's Trademarks.

97. Defendants' improper, deceptive and unauthorized use of Invicta's Trademarks constitutes deceptive and unfair trade practices under Florida Statutes § 501.201 et seq., in that the Defendants have represented that their products and/or services have the sponsorship and/or approval of the Plaintiffs that they do not have.  This is likely to

create the false impression that the products and/or services are authorized, sponsored, endorsed, or affiliated with Plaintiff.

98. The public is likely to be damaged as a result of Defendants' deceptive and unfair trade practices.

99. Plaintiff has suffered actual damages as a direct and proximate result of Defendants' wrongful, deceptive and unfair trade practices.

100. Defendants' wrongful, deceptive and unfair trade practices are causing Plaintiff to suffer irreparable harm, and irreparable harm will continue unless enjoined.

101. Unless preliminarily and permanently enjoined by this Court, Defendants will continue said deceptive and unfair trade practices, thereby deceiving the public and causing Plaintiff immediate and irreparable injury for which it has no adequate remedy at law.

WHEREFORE, the Plaintiff, INVICTA, demands that Defendants, their agents, servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert with them, be enjoined in this and all other judicial districts in the United States, preliminarily during the course of this litigation and permanently from: (i) marketing, distributing, selling, offering for sale, holding for sale or advertising any of their services by using the name, trademark, or likeness of Invicta's Trademarks or any colorable variation or imitation thereof; and, (ii) representing that any services distributed, sold, held for sale or advertised by them is sponsored or authorized by Plaintiff in this district or in any other district in which Plaintiff seeks to enforce this Court's injunction order; the Plaintiff also demands a judgment in its favor against the Defendants, i-DESIGN,

CREAAL and TERVELDE., for damages, pre-judgment interest, post judgment interest,

costs, attorney's fees and for such further relief as the Court deems proper.

Dated: <u>August 9, 2017.</u>                         Respectfully submitted,


By: <u>s/ **Francis R. Gil**          </u>
        Francis R. Gil, Esq., Trial Counsel
        Florida Bar No.: 622079
        Attorney for Plaintiff
        1041 Ives Dairy Road
        Suite 238
        Miami, Florida 33179
        Tel.: (305) 493-2400
        Fax: (305) 493-2500
        E-Mail: frglaw@bellsouth.net